Opinion filed July 20, 2023



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00141-CR
_____

## MIGUEL ANGEL CLAUDIO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR28220**

## M E M O R A N D U M   O P I N I O N

Appellant, Miguel Angel Claudio, entered an open plea of guilty to the offense of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2022). The trial court accepted Appellant's plea of guilty, and after a punishment hearing, found Appellant guilty of the charged offense and

assessed his punishment at twelve years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

On appeal, Appellant raises three issues. He contends that the trial court erred when it (1) admitted photographs that depicted blood splatter from the crime scene; (2) admitted photographs of the victim as he appeared during his hospitalization; and (3) admitted testimony from the victim's wife regarding how the victim's injuries have affected them. We affirm.

## I. *Factual and Procedural Background*

On December 5, 2020, Trevor Ross and his wife, Teodora Garcia, hosted a family get-together at their house. They were visiting in the living room when Jasmin Galvan and her boyfriend, Appellant, began to argue because Appellant was ready to leave but Galvan was not. Appellant began pushing and pulling Galvan and Ross told Appellant that he needed to leave, which angered Appellant. Ross testified that he "toss[ed]" Appellant to the ground because Appellant was "[v]ery aggravated" and would not leave his property. Garcia's father pulled Ross off of Appellant and the two men separated. Ross, believing that his encounter with Appellant had ended, was standing next to his pickup when Appellant approached and stabbed him with a pocketknife. Once Ross realized that he had been stabbed, he went inside and found his wife; she then called 9-1-1.

Officer Steven Dekeratry, with the Brownwood Police Department, responded to the 9-1-1 call. After he detained Appellant, Officer Dekeratry checked on Ross. Officer Dekeratry testified that when he approached, Ross looked like he was in "pretty rough shape." He further testified that Ross was holding towels on his lower torso to stop the bleeding and that there was a significant amount of blood on Ross's shirt, hands, and the towel. Officer Dekeratry testified that EMS arrived shortly thereafter and transported Ross to the hospital.

During the punishment hearing, Appellant's trial counsel made three evidentiary objections that are relevant to this appeal, all of which the trial court overruled.

First, Appellant's trial counsel objected to the admission of photographs that depicted blood splatter at the scene of the assault, on the basis that the photographs were not relevant. The State argued that the blood splatter images were relevant to show the extent of Ross's injuries and the amount of blood that Ross had lost as a result of the attack, which was relevant to the severity of the charged offense. Second, Appellant's trial counsel objected, on the basis of relevance and Rule 403, to the admission of photographs that depicted Ross while he was hospitalized. *See* TEX. R. EVID. 401, 403. The State argued that these photographs showed the seriousness of Ross's injury and were thus relevant and probative to the issue of punishment. Third, Appellant's trial counsel objected and claimed that Garcia's testimony about how the incident had affected Ross emotionally and "in terms of the way he acts" was speculative and irrelevant.

## II. *Standard of Review*

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010); *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)); *Walter v. State*, 581 S.W.3d 957, 977 (Tex. App.—Eastland 2019, pet. ref'd).

We will not reverse a trial court's decision to admit or exclude evidence, and there is no abuse of discretion, unless that decision lies outside the zone of reasonable

disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009); *Cameron*, 241 S.W.3d at 19; *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Walter*, 581 S.W.3d at 977. Furthermore, we will uphold a trial court's evidentiary ruling, even if the trial court's reasoning was flawed, if it is correct on any theory of law that reasonably finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016); *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

### III. *Analysis*

#### A. *Blood Splatter Photographs*

In his first issue, Appellant contends that the trial court erred when it admitted photographs that depicted blood splatter from the crime scene. Specifically, Appellant argues that the blood *splatter* photographs were improperly admitted because Officer Dekeratry, who authenticated the photographs, was not qualified to testify as an expert witness about blood *spatter* evidence or analysis, and no proper blood spatter analysis was presented to give meaning to the photographs. The State asserts that Appellant did not preserve this complaint for our review. We agree with the State.

During the punishment hearing, Appellant's trial counsel objected to the admission of photographs that depicted blood splatter solely on the basis that the photographs were not relevant. Appellant did not object or assert in the trial court, as he does now on appeal, that Officer Dekeratry was not qualified to express an expert opinion concerning blood spatter evidence or analysis. For a complaint to be properly preserved for appellate review, a party must present a specific, timely

objection to the trial court that articulates and makes the trial court aware of the specific grounds for the ruling that the complaining party seeks. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020); *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). Further, the complaint raised on appeal must correspond to and comport with the objection made at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).

In this case, the objection made by Appellant at trial to the admission of the photographs that depicted blood *splatter*—relevance—does not correspond to or comport with the complaint that he now advances on appeal—that the witness (Officer Dekeratry) was not qualified to express an expert opinion concerning blood *spatter* evidence or analysis. *Id.* As we have said, an objection asserted at trial on one ground cannot support a different contention on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). As such, the arguments raised on appeal must comport with the objections made at trial, or they are waived. TEX. R. APP. P. 33.1(a)(1)(A); *Dominguez v. State*, 474 S.W.3d 688, 699 (Tex. App.—Eastland 2013, no pet.). Therefore, Appellant presents nothing for our review.

Nevertheless, even if Appellant's complaint had been preserved for our review, the trial court did not abuse its discretion when it admitted the blood splatter photographs. Rule 701 of the Texas Rules of Evidence permits a witness to testify about opinions or inferences that are rationally based on the witness's perceptions. *See* TEX. R. EVID. 701. "Perceptions refer to a witness's interpretation of information acquired through his or her own senses or experiences at the time of the event (i.e., things the witness saw, heard, smelled, touched, felt, or tasted)." *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). Therefore, a witness's testimony may include opinions, beliefs, or inferences provided they are drawn from experiences or observations that the witness personally experienced. *Id.*

5

Officer Dekeratry responded to the 9-1-1 call and observed the crime scene. The only testimony he offered that pertained to the blood splatter photographs was to authenticate them—that the photographs accurately depicted a large amount of recent blood splatter on the front porch of Ross's residence. His observation that the blood on Ross's front porch was recent did not require any significant level of expertise nor was it necessary that his observations be based on any scientific theory. Officer Dekeratry only perceived the events and formed an opinion that a reasonable person could draw from observing the scene. *McCray v. State*, 873 S.W.2d 126, 127–28 (Tex. App.—Beaumont 1994, no pet.) (the admission of testimony from a police detective inferring that the victim was "trapped" behind a door based on photographs of blood splatters on the wall was not an abuse of discretion, regardless of whether the witness was considered to be a lay witness or an expert witness). Further, the photographs that depicted the blood splatter were not only relevant, but also fairly probative to show the extent of Ross's injuries and the severity of Appellant's attack upon him.

We conclude that the trial court did not abuse its discretion when it admitted the blood splatter photographs. Accordingly, we overrule Appellant's first issue.

B. *Photographs of Ross in the Hospital*

In his second issue, Appellant argues that the trial court erred when it admitted photographs of Ross as he appeared when he was hospitalized. The challenged photographs depict Ross's injuries during his hospitalization. Appellant claimed at trial that, because he pleaded guilty to the indicted offense, these photographs were not relevant to the state's burden of proof. Further, Appellant argues that, on balance, the prejudicial effect of admitting these photographs substantially outweighed any probative value that could be attributable to the photographs.

The trial court has "wide discretion in deciding the admissibility of evidence presented at the punishment phase of trial." *Williams v. State*, 176 S.W.3d 476, 480 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Further, the trial court when making a sentencing determination, is entitled to consider "any matter the court deems relevant to sentencing." TEX. CODE CRIM. PRO. ANN. art. 37.07 § 3(a)(1) (West Supp. 2022). These matters may include evidence of the defendant's character, the circumstances of the offense for which he is being tried, and evidence pertaining to the defendant's personal responsibility and moral culpability for the charged offense. *Id.*; *see also Stavinoha v. State*, 808 S.W.2d 76, 79 (Tex. Crim. App. 1991) (per curiam).

"Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citing TEX. R. EVID. 402). Evidence is relevant if it has any tendency to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. However, Rule 403 provides that relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID 403.

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (citing *Montgomery*, 810 S.W.2d at 376); *see Martin v. State*, 570 S.W.3d 426, 437 (Tex. App.—Eastland 2019, pet. ref'd). "Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). Therefore, in reviewing a trial court's Rule 403 determination, we will reverse the trial court's

ruling only if a clear abuse of discretion is shown. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Montgomery*, 810 S.W.2d at 392; *Martin*, 570 S.W.3d at 437.

When undertaking a Rule 403 analysis, a trial court must consider several factors (the *Gigliobianco* factors) and balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Garcia v. State*, 630 S.W.3d 264, 268 (Tex. App.—Eastland 2020, no pet.) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). These factors guide our analysis.

The admissibility of a photograph rests with the sound discretion of the trial court. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). In deciding whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, a court may consider several factors, including (1) the number of photographs offered for admission, (2) the gruesomeness, detail, and size of the photograph, (3) whether the image is depicted in color, (4) whether the body in the photograph is naked or clothed, (5) whether the photograph is a "close-up" image, and (6) whether the body has been altered since the crime occurred. *Hayes*, 85 S.W.3d 815; *Garcia*, 630 S.W.3d at 269; *see also Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000).

Appellant argues that these photographs consist of most of the State's visual evidence, are in color, and are "close-up" images of Ross's body. While Appellant

is correct that these photographs are "close up" color images of Ross's wounds, a trial court does not err because it admits photographs of this nature, even if the images are arguably gruesome. *Sonnier*, 913 S.W.2d at 519; *Luna v. State*, 264 S.W.3d 821, 829 (Tex. App.—Eastland 2008, no pet.). "[W]hen the power of the visible evidence emanates from nothing more than what the defendant has himself done[,] we cannot hold that the trial court has abused its discretion merely because it admitted the evidence." *Sonnier*, 913 S.W.2d at 519.

"The first two *Gigliobianco* factors focus on the probative value of and the State's need for the evidence." *Garcia*, 630 S.W.3d at 269. The term "probative value" refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make the existence of a fact of consequence more or less probable—along with the proponent's need for the evidence. *Gigliobianco*, 210 S.W.3d at 641. Here, the photographs of Ross's body at the hospital are relevant and depict Ross's wounds and injuries that are a direct result of Appellant's actions. The trial court could have reasonably determined that these photographs were probative not only for that reason but also to show the severity and circumstances of Appellant's attack upon Ross. Further, they were helpful to the trial court in assessing what it determined to be an appropriate sentence based on Appellant's conduct. *See Williams*, 176 S.W.3d at 481.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. *Garcia*, 630 S.W.3d at 269. Appellant's actions inflicted serious wounds and injuries upon Ross. These photographs depicted Ross's injuries and were not any more gruesome than what one would expect to see for a person who was attacked and wounded in such a manner. Although Appellant argues that these photographs could have generated an emotional response, it is reasonable to conclude that these photographs did not tend to suggest a decision by the trial court

9

on an irrational or improper basis. In fact, the sentence imposed by the trial court—twelve years, which falls in the middle of the punishment range for this offense—supports such a conclusion.

Finally, we cannot conclude that the admission of these photographs caused an undue delay or resulted in a needless presentation of cumulative evidence. Rule 403 does not mandate the exclusion of all cumulative evidence. Rather, it requires that evidence be excluded only if the probative value of the evidence is substantially outweighed by the needless presentation of cumulative evidence. TEX. R. EVID. 403. The determination of whether evidence is needlessly cumulative is inherently a discretionary decision for the trial court to resolve. Here, these photographs are not particularly cumulative of other evidence that was admitted during the punishment hearing. Further, the amount of time that was dedicated to offer and admit them was minimal; the discussion between the trial court and trial counsel regarding the admission of these photographs only spanned two and one-half pages of the record. Thus, the trial court's decision to admit these photographs did not disrupt the efficient administration of the trial.

We have considered the *Gigliobianco* factors and conclude that the factors weigh in favor of the admission of these photographs. The images depicted in these photographs are indicative of the nature of the offense and the conduct for which Appellant was convicted. Therefore, the trial court did not abuse its discretion when it admitted them. Accordingly, we overrule Appellant's second issue.

C. *Garcia's Victim-Impact Testimony*

In his third issue, Appellant contends that the trial court erred when it allowed Garcia to testify regarding how Appellant's attack affected her and Ross. Victim impact testimony may be admissible at the punishment phase when that evidence has some bearing on the defendant's personal responsibility or moral culpability.

*Espinosa v. State*, 194 S.W.3d 703, 711 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Salazar v. State*, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002)). Victim impact evidence is designed to remind the factfinder of the foreseeable consequences that the crime had on the victim and the victim's family and to inform the factfinder of the specific harm caused by the crime in question. *Salazar*, 90 S.W.3d at 335. "Relevant victim impact evidence may include the physical, psychological, or economic effects of a crime on the victim or the victim's family." *Espinosa*, 194 S.W.3d at 711 (citing *Stavinoha*, 808 S.W.2d at 79; *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)).

Although victim impact testimony is generally admissible during the punishment phase, trial courts are encouraged to adopt appropriate limitations upon the extent, nature, and source of victim impact evidence. *Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998). When it is determined that the probative value of victim impact evidence outweighs its prejudicial effect, such evidence will be admissible in the punishment phase of non-capital offense trials. *Salazar*, 90 S.W.3d at 335–36; *Williams*, 176 S.W.3d at 482–83.

Here, Garcia testified about the manner in which Appellant's attack had affected her and Ross—physically, psychologically, and financially. According to Garcia, after the assault, Ross missed a significant amount of time from work which caused financial hardship for their family. Along with this, Garcia testified that she experiences anxiety and that Ross is now more hesitant to help others. Garcia's testimony was probative because it explained the harm she and Ross had suffered as a result of Appellant's vicious assault and how their suffering was directly related to Appellant's moral culpability and responsibility. Importantly, Garcia's victim impact testimony was brief and spanned only two and one-half pages of the reporters record. Ross's victim impact testimony was also brief and essentially corroborated

Garcia's testimony. Therefore, their testimony cannot be characterized as prejudicial based on its volume. *See Williams*, 176 S.W.3d at 483 (holding that testimony from the mother of the decedent that spanned only seven pages of the record was not prejudicial based on volume).

We conclude that the admission of Garcia's and Ross's victim impact testimony was relevant and did not unfairly prejudice Appellant. Therefore, the trial court did not abuse its discretion when it admitted this testimony. Accordingly, we overrule Appellant's third issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER
JUSTICE


July 20, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.